UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

SAMUEL CORBETT,

             Defendant.

------------------------------------X

10 Cr. 184

13 Cr. 184 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

      On June 13, 2013, Samuel Corbett ("Corbett" or "Defendant") pleaded guilty to distributing heroin during and in relation to a conspiracy, possession of a firearm, aiding and abetting the use of a firearm, and shooting and killing Leon Lodge, a/k/a "Khadaffi," pursuant to 18 U.S.C. § 924(j).

      For the reasons set forth below, Corbett will be sentenced to 360 months imprisonment followed by five years supervised release.  A special assessment of $100 is imposed.

Prior Proceedings

      Defendant was named in a Four-Count Indictment filed

1

in the Southern District of New York on January 7, 2011. Count
One charges that on July 31, 2009, in the Southern District of
New York, Corbett, a/k/a "Trip," B," during and in relation to a
conspiracy to distribute heroin in the Bronx, New York, did use
a firearm, and, in furtherance of such crime, did possess a
firearm, and did aid and abet the use, carrying, and possession
of a firearm, and in the course thereof did shoot and kill Leon
Lodge, a/k/a "Khadaffi," in the vicinity of 320 East 156th Street
in the Bronx.  Count Two charges that on October 27, 2009, in
the Southern District of New York, Corbett stole U.S. currency
from a branch of Chase Bank located at 1051 Westchester Avenue,
Bronx, New York.  Count Three charges that on October 30, 2009,
in the Southern District of New York, Corbett attempted to steal
U.S. currency from a branch of Chase Bank located at 1650 East
Gun Hill Road, Bronx, New York.  Count Four charges that on
October 30, 2009, in the Southern District of New York, Corbett
attempted to steal U.S. currency from a branch of Chase Bank
located at 75 East 161st Street, Bronx, New York.


The Sentencing Framework

          In accordance with the Supreme Court's decision in

2

United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   the need for the sentence imposed —
>
>> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)   to afford adequate deterrence to criminal conduct;
>>
>> (C)   to protect the public from further crimes of the defendant; and
>>
>> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)   the kinds of sentences available;
>
> (4)   the kinds of sentence and the sentencing range established for —
>
>> (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

3

     (6)    the   need   to   avoid   unwarranted   sentence
               disparities   among   defendants   with   similar
               records   who   have   been   found   guilty   of
               similar conduct; and

     (7)    the need to provide restitution to any victims of
               the offense.

18 U.S.C. § 3553(a).   A sentencing judge is permitted to find

all the facts appropriate for determining a sentence, whether

that sentence is a so-called Guidelines sentence or not.   See

Crosby, 397 F.3d at 114-15.


The Defendant


       The   Court   adopts   the   facts   set   forth   in   the

Presentence   Investigation   Report   ("PSR")   with   respect   to

Defendant's personal and family history.


The Offense Conduct


       The   following   description   draws   from   the   PSR.   The

specific   facts   of   the   underlying   conduct   are   adopted   as   set

forth in that document.


       On July 30, 2009, Victor Ozuna ("Ozuna"), a worker for

a heroin trafficking organization (the "Courtlandt Avenue Organization"), based in and around the Melrose and Jackson public housing complexes in the Bronx, was selling retail quantities of heroin in one of the public spaces in the Melrose Houses. As Ozuna approached a customer, he was surprised to see Leon Lodge, a/k/a "Khadaffi," also approach the customer with heroin. Lodge had recently been released from prison and did not work for the Courtlandt Avenue Organization. Ozuna reached the customer first and sold him heroin. Lodge then confronted Ozuna and berated Ozuna for "stealing" a heroin sale from Lodge. Ozuna told Lodge that the Melrose Houses "belonged" to the Courtlandt Avenue Organization. The argument quickly escalated, at which time Lodge drew a knife and slashed Ozuna, who then left the scene.

Later that evening, Corbett was approached by the chief enforcer for the Courtlandt Avenue Organization, David Crosby ("Crosby"). Corbett did not work for the Organization, but was friendly with a number of its members. Crosby told Corbett that one of the leaders of the Organization, Dwayne Henry, had exchanged words with Lodge and that he wanted Lodge shot. Crosby proposed that Corbett shoot Lodge in exchange for $5,000 (Crosby would provide him with a .38 caliber handgun).

Corbett agreed.

On July 31, 2009, Corbett, who was in possession of the .38 caliber handgun, observed Lodge exit his apartment building on 156th Street in the Bronx, and Corbett shot Lodge five or six times before fleeing on his bike.   Lodge died from his wounds at the scene.   Corbett was paid $2,500 for the shooting.

In October 2009, Corbett and Joseph Edwards ("Edwards") were involved in the robbery of a Chase Manhattan Bank at 1051 Westchester Avenue in the Bronx, and an attempted robbery of a Chase Manhattan Bank at 1650 East Gun Hill Road in the Bronx. Corbett was responsible for entering the banks and Edwards was the driver for each robbery.   The loss to the bank at the Westchester Avenue location was $12,500. In the second attempted robbery, Corbett handed the teller a note demanding $40,000 and implied that he had a gun. The teller then activated the panic alarm and left Corbett at the counter.   Corbett then fled, but a police officer, who had observed him pull a mask over his face, entered the bank and learned that Corbett had attempted a robbery. Another officer followed Corbett to a vehicle in which there were other occupants.   The officer

6

directed Corbett and the others not to move, but Corbett made a sudden movement which the officer perceived was Corbett raising a firearm.  The officer then fired his weapon, striking the side of the vehicle, which fled the scene.  The vehicle, which was later located, was registered to Edwards.  Edwards was arrested by the NYPD on October 30, 2009.  He was transferred to federal custody on January 7, 2010.  Corbett was arrested by the NYPD on March 30, 2010, and he was transferred to federal custody on March 30, 2010.

According to the Government, there is no connection between the bank robberies and the murder of Leon Lodge.

On August 17, 2010, Henry allocated to his conduct as charged in Count 1, and ultimately received a sentence of 205 months' imprisonment and 60 months of supervised release.

On September 10, 2010, Crosby allocated to his conduct as charged in Count 1, and ultimately received a sentence of 166 months' imprisonment and 60 months of supervised release.

On September 17, 2010, Ozuna allocated to his conduct as charged in Count 1, and ultimately received a sentence of 148

7

months' imprisonment and 60 months of supervised release.

In consideration of the Defendant's guilty plea to the Leon Lodge murder, at the time of sentencing, the Government will move to dismiss the robbery-related charges (specifically, Counts Two through Four of Superseding Information S1 10 CR 184 (RWS)).  As such, Corbett has only pled to Count One of the Superseding Indictment.

It is unknown at this time if a victim impact statement by relatives of the victim is forthcoming. On the advice of defense counsel, the Defendant did not make a statement for acceptance of responsibility to the interviewing probation officer. However, probation was informed that Corbett provided an allocution acceptable to the Court at the time of his guilty plea.

The Defendant has an extensive criminal history, including assault in the third degree in 2004, robbery in the third degree in 2004, disorderly conduct in 2005, criminal possession of a controlled substance in 2006, criminal sale of a controlled substance in the third degree in 2008, criminal possession of a weapon in the fourth degree in 2008, and

8

criminal sale of marijuana in the fourth degree in 2008.

The Relevant Statutory Provisions

The maximum term of imprisonment is life, pursuant to 18 U.S.C. § 924(j)(1) and 2.   The maximum term of supervised release is five years, pursuant to 18 U.S.C. § 3583(b)(1).   The Defendant is not eligible for probation, as the offense is a Class A felony, pursuant to 18 U.S.C. 3561(a)(1).

The maximum fine is $250,000, pursuant to 18 U.S.C. § 3571(b)(3).   A special assessment of $100 is mandatory, pursuant to § 18 U.S.C. 3031.

Forfeiture and restitution are not applicable.

**The Guidelines**

The November 1, 2012 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility,

9

and term of imprisonment:

Pursuant to Defendant's plea allocution, Defendant's base offense level for Count One is 43, pursuant to §2A1.1(a). Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to §3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous paragraph, an additional one-level reduction is warranted, pursuant to §3E1.1(b), because the defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. In accordance with the foregoing calculations, the applicable offense level is 40. Defendant has a Criminal History Category of V.

Based upon the calculations set forth above, the Defendant's stipulated Guidelines range is 360 months' imprisonment to life. The guideline range for a term of supervised release is at least two years but not more than five years, pursuant to §5D1.2(a)(1).

10

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in <u>Booker</u>, 543 U.S. 220, and the Second Circuit's decision in <u>Crosby</u>, 397 F.3d 103.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant."  Pursuant to 18 U.S.C. § 3553 (2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Given the severity of Defendant's offenses and his extensive criminal history, while taking into consideration his family history, the sentence imposed, which is within the guidelines, is appropriate.

11

**The Sentence**

For the instant offense, Corbett will be sentenced to 360 months' imprisonment followed by five years supervised release.

The standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)     The Defendant will participate in a program approved by the U.S. Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol.  The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer.  The Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

(2)     The Defendant shall submit his person, residence, place of business, vehicle, or any other premises

12

under his control to a search on the basis that the probation
officer has reasonable belief that contraband or evidence of a
violation of the conditions of the release may be found.   The
search must be conducted at a reasonable time and in reasonable
manner.   Failure to submit to a search may be grounds for
revocation.   The defendant shall inform any other residents that
the premises may be subject to search pursuant to this
condition.

(3)   The Defendant is to report to the nearest
Probation Office within 72 hours of release from custody.

A special assessment of $100, payable to the United
States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification
at the sentencing hearing.

13

It is so ordered.

New York, NY
March 24 , 2014

ROBERT W. SWEET
U.S.D.J.