UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>SAMUEL CORBETT,<br><br>Defendant. | 10 Cr. 184 (PAE)<br><br>OPINION AND ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion for compassionate release by defendant Samuel

Corbett, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Corbett is serving a 300-month prison

sentence based on his guilty plea to use of a firearm to commit a murder during and in relation to

a drug trafficking crime.  Corbett seeks release from Federal Correctional Center ("FCI") Butner

in North Carolina on multiple grounds, including relating to the Government's evidence of his

offense, his background, the risks to him presented by the COVID-19 pandemic, prison

conditions, and courses he has taken in prison.  Dkt. 49 ("Def. Mot."); Dkt. 55 ("Def. Reply").

The Government opposes Corbett's motion.  Dkt. 54 ("Gov't Opp.").  For the reasons that

follow, the Court denies the motion.

I.      **Background**

A.      **Corbett's Guilty Plea and Sentencing**

On March 5, 2010, a grand jury in this District indicted Corbett on one count of bank

robbery and two counts of attempted bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2.

Dkt. 7.  On January 7, 2011, Corbett was charged in a superseding information with, in addition

to those offenses, murder through the use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(j) and 2.  Dkt. 17.

On June 13, 2013, Corbett pled guilty before the Hon. Robert W. Sweet—to whom the case was then assigned—to one count of murder through the use of a firearm, during and in relation to a drug trafficking crime.  Dkt. 37.

On March 25, 2014, Judge Sweet issued, in advance of the sentencing hearing, a written sentencing opinion.  *See* Dkt. 40 ("Sent'g Op.").[1]  Judge Sweet adopted the unobjected-to facts set out in the presentence report ("PSR"), *id.* at 4, calculated the Sentencing Guidelines' range to call for a sentence between 360 months' and life imprisonment, based on an offense level of 40 and a criminal history category of V, *id.* at 10, and stated that he anticipated imposing a sentence of 360 months' imprisonment, while noting that the terms of the sentence were subject to modification at the upcoming sentencing hearing.  *Id.* at 12–13.  Judge Sweet stated that he had considered all of the § 3553(a) factors, and that the sentence imposed was necessary "[g]iven the severity of Defendant's offenses and his extensive criminal history."  *Id.* at 11.

As to Corbett's offenses, Judge Sweet, drawing upon the PSR, recounted that, on the evening of July 30, 2009, Corbett had been approached by David Crosby, the chief enforcer of a narcotics gang known as the Courtland Avenue Organization.  Crosby proposed that Corbett shoot Leon Lodge, a member of a rival gang who earlier that day had drawn a knife and slashed a member of the Courtland Avenue Organization following a dispute over territory.  *Id.* at 5.  Crosby offered Corbett $5,000 to carry out the shooting.  The next day, Corbett observed Lodge exit his apartment building, and shot him five to six times with a .38 caliber handgun before

---

[1] On May 28, 2014, Judge Sweet issued an "opinion amendment" correcting an inaccuracy in the original opinion as to the offense of conviction.  Dkt. 45.

2

fleeing on his bike. Lodge died from his wounds. Corbett was paid $2,500 for the shooting. *Id.* at 5–6.

Separately, in October 2019, Corbett had been involved in the robbery or attempted robbery of two Chase Manhattan Bank branches in the Bronx. In each instance, Corbett was responsible for entering the bank. In the first robbery, the bank lost $12,500. In the second, Corbett pulled a mask over his face and handed the teller a note demanding $40,000 and implying he had a gun; an officer interrupted the robbery and pursued Corbett, who made a sudden movement consistent with raising a gun, causing the officer to fire his weapon, which struck Corbett's car as it fled. *Id.* at 6–7.

As to Corbett's criminal history, Judge Sweet noted that it was extensive,

> including assault in the third degree in 2004, robbery in the third degree in 2004, disorderly conduct in 2005, criminal possession of a controlled substance in 2006, criminal sale of a controlled substance in the third degree in 2008, criminal possession of a weapon in the fourth degree in 2008, and criminal sale of marijuana in 2008.

*Id.* at 8–9.

On May 22, 2014, after the parties filed sentencing submissions, sentencing was held. Judge Sweet heard statements from counsel and from Corbett, who professed to have changed. Judge Sweet then spoke. He identified the sentence as difficult "because of the acts which you have committed" and "your record." *See* 5/22/14 Tr. 7. He added: "There is no evidence here on the record of any redemption." *Id.* However, he stated, "you tell me that you believe you have changed and that you have a capacity to change. And I credit that." *Id.* He then sentenced Corbett to 300 months' imprisonment. That deviation from the Guideline range, Judge Sweet stated, took into account the interests in deterrence and a just sentence. *Id.* He explained: "[Y]ou have to recognize that you must atone and society requires that somebody who has

3

conducted themselves as you have must be, and, the word, there is only one word for it, punished[,] and that's the reality." *Id.* "At the same time," he stated, "I do credit your desire to change and the possibility of your change," and, "to provide both deterrence but also to credit the possibility of redemption," he was imposing a sentence 60 months below the bottom of the Guideline range. *Id.* ("I'm reducing the guideline sentence really for the purpose of showing you that there is a possibility of redemption and perhaps you will be able to live a useful life once you return to society."); *see also* Dkt. 47 (judgment).

### B.    Corbett's § 3582(c) Motion

On June 5, 2023, Corbett filed a *pro se* motion for compassionate release. He makes six arguments for release, which are set out below. According to BOP records, Corbett prefaced this motion with two requests to the BOP for such relief: one submitted on or about May 5, 2021, which was denied on May 24, 2021, and a second, submitted on April 14, 2023, which was denied on or about June 10, 2023. Gov't Opp. at 4 n.3.

## II.    Discussion

### A.    Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.");

*United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants"; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the

Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n,

Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023).   The

amended guidance from the Commission as to what constitutes extraordinary and compelling

reasons now controls the analysis of a compassionate release petition, however initiated.  As this

is the first compassionate release decision this Court has issued under this updated guidance, it is

appropriate to summarize the changes in full.

The Commission's guidance identifies six circumstances that, singly or in combination,

may so qualify.  U.S.S.G. § 1B1.3(b).  These are:

- *The medical circumstances of the defendant.*  U.S.S.G. § 1B1.13(b)(1).  In addition to
  previously recognized circumstances such as a defendant suffering from a terminal illness
  or a serious medical condition, *id.* §§ 1B1.13(b)(1)(A)–(B), the amended guidelines
  direct courts to consider whether the defendant is "suffering from a medical condition
  that requires long-term or specialized medical care" that is not being provided in prison
  and without which the defendant is at risk of serious health deterioration or death, *id.*
  § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected
  by an infectious disease or other "ongoing public health emergency declared by the
  appropriate federal, state, or local authority," where "due to personal health risk factors
  and custodial status," the defendant is at a greater risk of severe complications upon
  exposure, and where "such risk cannot be adequately mitigated in a timely manner," *id.*
  § 1B1.13(b)(1)(D).  This factor was informed by compassionate release decisions coming
  out of the COVID-19 pandemic.  *See* U.S. Sent'g Comm'n, Guidelines Manual 2023:
  Supplement to Appendix C at 206 (November 1, 2023).

- *The age of the defendant.*  Coupled with a deterioration in physical or mental health
  corresponding with the aging process as well as the portion of the original sentence
  served at the time of a compassionate release motion, this may support sentence
  reduction.  U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.*  Where the defendant is the "only available
  caregiver" for an immediate family member, this may support a sentence reduction.  *See
  id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.*  Where the defendant while in custody on the sentence in
  question was a victim of sexual abuse or physical abuse resulting in serious bodily injury
  "committed by, or at the direction of, a correctional officer, an employee or contractor of
  the Bureau of Prisons, or any other individual who had custody or control over the

defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catch-all provision.* Where a defendant presents "any other circumstances or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those situations listed above, they may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" (cleaned up)).

- *Changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court, before granting release, must assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B.    Analysis

The Court first considers Corbett's six arguments why extraordinary and compelling circumstances support his relief. Neither separately nor together, the Court finds, do these qualify as extraordinary and compelling reasons for release. The Court then considers whether Corbett's release would be consistent with the § 3553(a) factors.[2]

---

[2] The Government does not dispute that Corbett has satisfied the statutory exhaustion requirement of § 3582.

Corbett's first argument is that the evidence was insufficient to support his guilty plea to murder through the use of a firearm during and in relation to a drug trafficking offense. Def. Mot. at 2–5. That argument fails for multiple reasons. First, Corbett's plea allocution was itself sufficient to establish the elements of that offense. At the plea hearing, presided over by Magistrate Judge Pitman, the Court set out the elements of section 924(j). *See* Dkt. 37 ("6/13/13 Tr.") at 9. And Corbett, under oath, admitted each element, to wit, that, on July 31, 2009, he shot and killed Lodge in relation to a conspiracy to distribute heroin, and that he did so intentionally and with premeditation. *See id.* at 14–16. Corbett's plea allocution establishes his guilt. *See, e.g., Rosario v. United States*, 164 F.3d 729, 736 (2d Cir. 1998) (admissions in plea allocutions established elements of liability); *Chang v. United States*, 305 F.Supp.2d 198, 202 (E.D.N.Y. 2004) ("Petitioner's plea allocution provides clear factual bases for his plea of guilty to the offenses charged."). Second, as the Court reviewed at the plea hearing and Corbett stated he understood, by pleading guilty, Corbett waived his right to challenge whether the Government's trial evidence would have established his guilt beyond a reasonable doubt. *See* 6/13/13 Tr. 12–14. Third, even if Corbett had not waived his right to challenge the sufficiency of the evidence, the proper vehicle, following the time for direct appeal, would be a habeas petition under 28 U.S.C. § 2255, not a compassionate release motion. *See, e.g., United States v. Jacques*, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022); *United States v. Khan*, No. 18 Cr. 830 (VSB), 2023 WL 2911021, at *3 (S.D.N.Y. Apr. 11, 2023) . Fourth, even if there were a legal charter to consider Corbett's challenge on this motion, that challenge fails. Corbett centrally questions why, as a non-member of the Courtland Avenue Organization, he would have chosen to shoot a rival of that organization. Def. Mot. at 3. But the record supplies the answer to that question. As Corbett admitted in his plea allocution and as was set out in the factually

8

undisputed PSR, he did so knowing that the murder was undertaken to further a drug-trafficking conspiracy, *see* 6/13/13 Tr. 15; PSR at 5–6, and in return for Crosby's promise of $5,000, *see* PSR at 6, a point Corbett admits in his motion, *see* Def. Mot. at 5 ("Sadly, Corbett accepted.").

Corbett's second argument is that his 300-month sentence was substantively excessive, including because it exceeded the sentence that he believes a state court would have imposed. *See* Def. Mot. at 6–10. That argument also fails to establish an extraordinary and compelling circumstance for release. As the Government notes, the below-Guidelines sentence imposed by Judge Sweet was not substantially above the median and average sentences for this offense (240-month median sentence between 2015 and 2021; 262-month average sentence between 2015 and 2021; and 244-month average sentence in 2021). And those averages do not take into account aggravating factors specific to Corbett: his extensive criminal history (placing him in Criminal History Category V); the deliberate manner in which the murder was committed; and Corbett's three actual or attempted bank robberies, which his Guideline range did not take into account. To the extent Corbett compares his sentence to what he imagines his state-court sentence would have been, that argument is speculative, and contrary to guidance from the Second Circuit, which has noted that requiring district courts to reduce sentences to reflect local state-court sentencing practices would promote disparities in federal sentencing, undermining a central objective of the 1984 Sentencing Reform Act. *See United States v. Johnson*, 505 F.3d 120, 123 (2d Cir. 2007) ("[R]equiring district courts to reduce a defendant's sentence whenever he 'might have been subjected to different penalties had he been prosecuted in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from state to state.'" (quoting *United States v. Haynes*, 985 F.2d 65, 70 (2d Cir. 1993)); *see also United States v. Santiago*, 292 Fed. App'x 125, 126 (2d Cir.

9

2008). To the extent Corbett notes that his sentences was below that of his co-defendants, the facts of their cases differed from Corbett's, including in that none of those persons, as the Government notes, were sentenced for murder. *See* Gov't Opp. at 3.

Corbett's third argument is based on his difficult upbringing, including that his father abandoned him, his mother was addicted to drugs, and he spent time in foster homes and experienced abuse, hunger, and himself turned to illegal drugs. *See* Def. Mot. at 10–12. These circumstances are undeniably mitigating. But, at sentencing, these facts were all put before Judge Sweet; Judge Sweet stated that he had considered the entire record in assessing the just sentence; and Judge Sweet's decision, based on Corbett's promise of redemption, to impose a below-Guidelines sentence south of the one he originally anticipated appears to reflect his characteristically thoughtful attention to the defense's intervening sentencing submission, which emphasized Corbett's hard background. *See* 5/22/14 Tr. 7; *see also* Dkt. 43 at 4–7; PSR ¶¶ 50–59. In seeking release, Corbett does not identify facts not before Judge Sweet at sentencing. And Judge Sweet had the latitude to impose a sentence below 300 months but chose not to do so. Corbett's recapitulation of his background in his present motion in effect seeks to mitigate his sentence a second time based on the same facts. Although the amended Guidelines do not require that extraordinary and compelling circumstances be unforeseen or unforeseeable at the time of sentencing, Corbett's showing on its own merits does not qualify as an extraordinary and compelling circumstance warranting release, let alone release after service of less than 60% of his stated sentence.[3] *See, e.g., United States v. DeJesus*, No. 20 Cr. 464 (LJL), 2022 WL 1284563, at *2 (S.D.N.Y. Apr. 29, 2022) (denying compassionate release petition where

---

[3] Corbett was arrested on March 30, 2010, PSR ¶ 15, and thus has served a little over 13 ½ years (163 months) in prison as of this decision.

sentencing court had already taken into account allegedly extraordinary and compelling reason for release at sentencing); *United States v. Acevedo*, No. 17 Cr. 604 (CM), 2021 WL 3772018, at *3 (S.D.N.Y. Aug. 25, 2021) (same); *United States v. Seshan*, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020), *aff'd*, 850 Fed. App'x 800 (2d Cir. 2021) (same).

Corbett's fourth argument is based on COVID-19. *See* Def. Mot. at 13–14. Corbett has underlying conditions, including asthma, that, especially before vaccines became available in early 2021, enhanced the mortality risk from COVID-19. Before that point, this Court ordered the release of numerous defendants whose respiratory conditions presented a substantial such risk, provided, of course, that the defendant did not pose a risk of violence and that the § 3553(a) factors were consistent with release at that stage of the sentence. *See, e.g.*, *Phillibert*, 557 F. Supp. 3d at 461 (ordering compassionate release of defendant with an obstructive pulmonary disease); *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2020 WL 10356810, at *6 (S.D.N.Y. Jan. 15, 2021) (ordering compassionate release of defendant with obesity and hypertension); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), 2020 WL 10356810, at *3 (S.D.N.Y. Sept. 15, 2020) (ordering compassionate release of defendant with asthma); *United States v. Simon*, 482 F. Supp. 3d 151, 157 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant with serious medical conditions). However, vaccines have now long been available, and Corbett's prison medical records reflect that has been vaccinated and looks to have been boosted as well. *See* Gov't Opp. Ex. A at 62, 91; *id.*, Ex. B. at 12. As this Court has observed, "given the efficacy of such vaccines against severe illness, hospitalization, and death, fully vaccinated inmates are hard-pressed to claim that the risk of contracting COVID-19 presents an extraordinary and compelling circumstance." *United States v. Geraldo*, No. 11 Cr. 1032 (PAE), 2023 WL 2584196, at *4 (S.D.NY. Mar. 21 2023 (collecting cases); *see also United States v.*

*Jones*, No. 17 Cr. 214 (CM), 2021 WL 4120622, at *2–3 (S.D.N.Y. Sept. 9, 2021) (risk of

COVID-19 to a fully vaccinated individual is substantially reduced such that usually will not be

enough to establish extraordinary and compelling reason); *United States v. Mena*, No. 16 Cr. 850

(ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) (access to COVID-19 vaccine

generally militates against compassionate release on that basis); *United States v. Santana*, No. 18

Cr. 865 (VEC), 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (no extraordinary and

compelling circumstances in light of efficacy of COVID-19 vaccine).  Corbett's medical records

do not reveal that COVID-19 today presents an outsized risk to him of an extreme outcome.  On

the contrary, his medical records indicate that he has recovered from a confirmed case of

COVID-19.  *See* Gov't Opp., Ex. A at 33, 86; *id.*, Ex. B. at 33–34; *see also United States v.*

*Garcia*, 19 Cr. 210 (CS), 2022 WL 672758, at *6 (S.D.N.Y. Mar. 7, 2022) (recovery from

COVID-19 weighs against extraordinary and compelling finding); *United States v. Folkes*, 18 Cr.

257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) (same); *United States v. Alamo*,

19 Cr. 640 (RMB), 2021 WL 1904975, at *2 (S.D.N.Y. May 12, 2021) (same).

Corbett's fifth argument is that harsh conditions of confinement warrant a sentence

reduction.  *See* Def. Mot. at 14–18.  In addition to circumstances attendant to the pandemic, he

identifies a food poisoning outbreak, cold and bad food, a leaky roof, and black mold that has

appeared in ceiling tiles.  For defendants who were held in lockdown conditions at municipal

jails in New York City such as the Metropolitan Detention Center ("MDC") during the most

severe period of the pandemic—essentially its first year—the Court at sentencing has imposed

lower sentences on account of the severity of these conditions, effectively crediting defendants

with more than one day for each day served in such conditions.  For two independent reasons,

however, Corbett's invocation of prison conditions at FCI Butner does not entitle him to the

12

relief he seeks here.  First and most important, depending on the extent of good-behavior credit

that he may receive, Corbett has between approximately eight years and approximately 11 ½

years left to serve in prison.  A reduction of that scale would be vastly disproportionate to the

adversity Corbett experienced.  Second, although the Court would be open to a factual showing

that conditions at FCI Butner during the pandemic's height were so severe as to support a claim

of extraordinary and compelling circumstances as § 3582(c) requires, Corbett's narrative as to

this period is brief, general, and uncorroborated.  Federal prisoners' experiences during the

COVID-19 pandemic varied depending on the facility.  Substantiation and particularization

would be required before the Court could grant relief under § 3582(c) based on pandemic

conditions Corbett experienced at FCI Butner, a non-urban institution for sentenced defendants

at which prison conditions cannot be assumed to have tracked those at the MDC or other

municipal holding facilities.  *See, e.g.*, *United States v. Santana*, No. 12 Cr. 790 (PAE), 2023 WL

2625790, at *4 (S.D.N.Y. Mar. 24, 2023) ("[G]eneralized statements about prison conditions

untethered to compelling specifics of the defendant's particular circumstances do not make the

defendant's conditions 'extraordinary and compelling.'"); *United States v. Butler*, No. 18 Cr. 834

(PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (denying compassionate release

where nothing to indicate that prison conditions especially severe so as to rise to level of

extraordinary and compelling); *United States v. Marmolejos*, No. 19 Cr. 626 (PAE), 2021 WL

807128, at *3 (S.D.N.Y. Mar. 3, 2021) (same); *United States v. Fiseku*, No. 14 Cr. 384 (PAE),

2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020) (same).

Corbett's sixth argument is that, while incarcerated, he has participated in several

programs.  *See* Def. Mot. at 18.  That is commendable.  However, participation in programming

aimed at rehabilitation is expected of inmates; Corbett's record of program attendance is not at

all out of the ordinary for federal inmates; and, as the Government notes, disciplinary infractions that Corbett has incurred at FCI Butner, including in 2019 and 2020, offset this record. Corbett's participation in programming does not make out an extraordinary circumstance. *See, e.g.*, *United States v. Needham*, No. 06 Cr. 911 (AKH), 2022 WL 19769, at *4 (S.D.N.Y. Jan. 3, 2022) (finding rehabilitation through prison programming not to rise to the level of extraordinary and compelling reason for early release); *United States v. Torres*, No. 16 Cr. 500 (RMB), 2021 WL 1131478, at *3 (S.D.N.Y. Mar. 24, 2021) (finding enrollment in GED and other courses was not an extraordinary and compelling circumstance); *United States v. Bolden*, 15 Cr. 466 (VB), 2021 WL 242551, at *2 (S.D.N.Y. Jan. 25, 2021) ("But participation in or completion of [programming], while laudable, is not an extraordinary and compelling reason warranting a compassionate release."); *United States v. Reyes*, No. 91 Cr. 358 (KPF), 2020 WL 5518483, at *3 (S.D.N.Y. Sept. 14, 2020) (finding completion of "dozens" of prison-provided programs and attainment of GED, without more, did not support compassionate release).

For the reasons above, Corbett has not identified any extraordinary and compelling basis for release. Nor do the factors he identifies, considered together, meet this standard.

Even if Corbett had shown an extraordinary and compelling basis for release, the § 3553(a) factors would not favor early release, let alone release with many years to serve on his sentence. On the contrary, given the gravity of the offense and Corbett's prior criminal record, the Court finds that the § 3553(a) factors would outweigh, decisively, the factors to which Corbett points. *See United States v. Jenkins*, 854 F.3d 181, 190 (2d Cir. 2017) ("District courts are required to carefully consider on an individualized basis 'the nature and circumstances of the offense and the history and characteristics of the defendant'" and "those considerations must be applied in the context of the other § 3553(a) factors." (quoting 18 U.S.C. § 3553(a)(1))).

14

As to this point, the Court incorporates by reference Judge Sweet's assessments in his written pre-sentencing opinion and in his remarks at the sentencing hearing. Corbett's offense was gravely serious—he was paid $2,500 to murder a rival drug dealer to protect a drug trafficking organization's turf. And he carried out that senseless murder, shooting Lodge five or six times. Corbett also carried out or attempted to carry out three violent robberies. In this Court's assessment, Judge Sweet was right to conclude that no sentence beneath the below-Guidelines sentence he imposed of 300 months (25 years) was compatible with the § 3553(a) factors pointing towards a lengthy sentence. These were the interest in just punishment, which was weighty given Corbett's having taken a life as a hired gun and having committed other violent crimes; and the interests in specific and general deterrence, which were weighty given the failure of Corbett's prior criminal record to deter him and given the skein of violence in a several-month period in 2009 for which sentence was being imposed. Even had Corbett identified an extraordinary and compelling circumstance supporting his early release, these factors would have offset it. Granting release to Corbett would disserve these § 3553(a) factors.

## CONCLUSION

For the reasons above, the Court denies Corbett's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 49.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: November 21, 2023
       New York, New York